# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| AGRIPROCESSORS, INC. ) | |
| ) | BANKRUPTCY NO. 08-2751 |
| Debtor. ) | |
| ) | |
| JOSEPH E. SARACHEK, in his capacity as ) | |
| CHAPTER 7 TRUSTEE, ) | ADVERSARY NO. 10-09108 |
| ) | |
| Plaintiff. ) | |
| ) | |
| vs. ) | |
| ) | |
| CROWN HEIGHTS ) | |
| HOUSE OF GLATT, INC. ) | |
| ) | |
| Defendant. ) | |

**ORDER RE: MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

The Chapter 7 Trustee brought this case against Defendant Crown Heights House of Glatt, Inc., alleging it received fraudulent conveyances or preferential transfers from Debtor in the amount of $5,364,090.33. Defendant filed a Motion to Dismiss Trustee's fraudulent conveyance claim and a Motion for Summary Judgment on Trustee's preferential transfer claim. The Court held a telephonic hearing on August 12, 2013. M. David Graubard appeared on behalf of Defendant. Desirée Kilburg appeared on behalf of the Trustee, Joseph E. Sarachek. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).

## STATEMENT OF THE CASE

Trustee's Complaint seeks to recover $5,364,090.33 as either fraudulent transfers under 11 U.S.C. § 548 or as preferential transfers under 11 U.S.C. § 547(b). Defendant moves for dismissal of the fraudulent transfer claims and summary judgment on the preference claims.

Defendant argues dismissal of the fraudulent conveyance claim is appropriate as a matter of law because Debtor received equivalent value for the disputed transfers. Defendant argues for summary judgment on the preference claims because there is no dispute that Defendant is entitled to the "subsequent advance defense."

The parties agree that the Court can treat Defendant's Motion to Dismiss as a Motion for Summary Judgment.  Trustee resists Defendant's motions by arguing that there are material issues of fact to preclude either dismissal or summary judgment.  Specifically, Trustee argues that many of the transfers from Defendant were not directed to Debtor, so they were not for Debtor's benefit.  Trustee argues that if Debtor did not receive the transfers, then that would significantly undermine or eliminate Defendant's arguments.  The Court concludes that because there are significant factual disputes regarding whether Debtor benefited from the transfers, the Court cannot grant Defendant's motions.

## FACTUAL BACKGROUND

Debtor owned and operated one of the nation's largest kosher meatpacking and food-processing facilities in Postville, Iowa.  On November 4, 2008, Debtor filed a Chapter 11 petition in the Bankruptcy Court for the Eastern District of New York.  Debtor's bankruptcy petition and accompanying documents recited that its financial difficulties resulted from a raid conducted by U.S. Immigration and Customs Enforcement.  The raid led to numerous federal criminal charges.

The Bankruptcy Court approved the appointment of Joseph E. Sarachek as the Chapter 11 Trustee.  The court concluded that appointing a trustee was necessary under 11 U.S.C. § 1104(a)(1) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management."  The court later transferred the case to this

Court on December 15, 2008. This Court converted the case to a Chapter 7 bankruptcy. The U.S. Trustee for this region retained Mr. Sarachek as the Chapter 7 Trustee.

Gutel Tzvin is the sole shareholder of Defendant and is also a second cousin to Sholom Rubashkin, Debtor's President at the times relevant here. Aaron Tzvin, Defendant's Vice President, and Gutel Tzvin's husband, provides most of Defendant's factual contentions. Defendant states that it is in the business of selling kosher food products in Crown Heights, Brooklyn, New York, and was operating for at least ten years before Debtor's bankruptcy filing.

Defendant asserts that Debtor asked Defendant for a short-term loan in 2007. Defendant provided the loan. Between that time and the Debtor's bankruptcy, Defendant and Debtor continued a loan process where Defendant would make frequent short-term loans to Debtor. Defendant allegedly provided Debtor with approximately 112 loans in the pre-bankruptcy preference period. The loan process they agreed to allowed "window checks," which essentially meant Debtor could write checks from Defendant's checkbook as needed. However, Defendant explains that Debtor never had access to Defendant's bank account balance or other bank information.

Debtor normally paid Defendant back these short-term loans within a matter of one to three days. Defendant explains that the loan agreements were entirely oral, and Defendant did not charge Debtor interest in these transactions. Defendant further explains that Orthodox Jewish law would not allow Defendant to charge interest in these transactions. Defendant states that paying back the loans constitutes giving reasonably equivalent value, which would negate Trustee's fraudulent transfer claims. Defendant also argues that the "plateau theory" should apply in calculating Defendant's the new value, which is a defense against Trustee's preference avoidance claim.

3

Trustee argues Debtor did not receive the benefit of all of Defendant's alleged loans to Debtor. Trustee bases this argument on bank records and copies of checks that indicate the transfer was directed toward another party. Therefore, Trustee argues that Debtor could not have received reasonably equivalent value under § 548. Trustee further argues that Defendant uses a calculation for new value that "makes no sense and is unsupported by law." Trustee points out that the ability to perform a new value calculation relies on the assumption that all of the loans went to Debtor's benefit, which is an assumption that Trustee argues the Court cannot make.

## CONCLUSIONS OF LAW

While Defendant urges the Court to dismiss Trustee's fraudulent conveyance claim, it recognizes its Motion to Dismiss came after its Answer, and it agrees that the Court can treat its Motion to Dismiss as a Motion for Summary Judgment. Fed. R. Bankr. P. 7012(b) (applying Fed. R. Civ. P. Rule 12(b)–(i) to adversary proceedings in Bankruptcy); Fed. R. Civ. P. Rule 12(d). Thus, while there are technically two motions before the Court, they argue the exact same thing. The Court will treat them as one motion for summary judgment on the fraudulent transfer and preference claims.

### I.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to adversary proceedings). Substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact dispute is one that "might affect the outcome of the suit." Id. An issue is genuine when reasonable minds could differ as to the verdict of the case because of that issue. Id. at 251–52 (explaining that the facts cannot be "so one-sided that one party must prevail as a matter of

4

law"). At this point in the litigation, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The Court will view the facts and make "all reasonable inferences in the light most favorable to the nonmoving party." Reed v. City of St. Charles, Mo, 561 F.3d 788, 790 (8th Cir. 2009).

## II. Genuine Issues of Material Fact Preclude Summary Judgment on Trustee's Fraudulent Transfer Claims

Defendant argues that Trustee cannot show fraudulent transfers because Defendant made the disputed transfers for "reasonably equivalent value." Trustee argues constructive fraud. Where there is no evidence of actual fraud, Trustee must show that Debtor received less than "reasonably equivalent value" and was insolvent on the date of, or as the result of, the disputed transfers. 11 U.S.C. § 548(a)(1) (2012); see also Quad City Bank v. Berstler (In re Chapman Lumber Co.), Bankr. No. 05-00408, Adv. No. 06-09112, 2007 WL 2316528, *3 (Bankr. N.D. Iowa Aug. 8, 2007). Section 548(d)(2) defines value as "property, or satisfaction or securing of a present or antecedent debt of the debtor."

Whether Debtor received "reasonably equivalent value" is generally a fact question. See Kaler v. Able Debt Settlement, Inc. (In re Kendall), 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) (citing In re Ozark Rest. Equip. Co., 850 F.2d 342, 344 (8th Cir. 1988)). The Court inquires about whether "(1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." Sullivan v. Schultz (In re Schultz), 368 B.R. 832, 836 (Bankr. D. Minn. 2007); see also Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 748, 805 (B.A.P. 8th Cir. 2006). "There is no bright line rule used to determine when reasonably equivalent value is given." In re Schultz, 368 B.R. at 836 (quoting Linquist v. JNG Corp. (In re Lindell), 334 B.R. 249, 255–56 (Bankr. D. Minn. 2005)) (internal

5

quotation marks omitted).  The Court considers "the whole transaction and measure[s] all the benefits."  Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2001). It is important to point out this Court's conclusion in Sarachek v. Cohen: "Retirement of prior debt is reasonably equivalent value for purpose of the fraudulent conveyance defense."  Sarachek v. Cohen (In re Agriprocessors, Inc.), Adv. No. 10-09197, Bankr. No. 08-02751, 2013 WL 5726577 (Bankr. N.D. Iowa Oct. 21, 2013) (citing In re Rosen Auto Leasing, Inc., 346 B.R. at 805).

Defendant provides no documentation for the huge amount of money that exchanged between Debtor and Defendant other than copies of checks and their endorsements.  The endorsements and deposit notes, however, leave the identification of the checks' beneficiary unclear.  Trustee appropriately notes that it is impossible to determine whether Defendant made transfers for Debtor's benefit on many of the checks.  Debtor did not even receive the value from a number of Defendant's checks.  Some checks were payable to other parties.  While Trustee has agreed that Debtor and Defendant exchanged some value of money, the record does not establish that Defendant provided "reasonably equivalent value" for Debtor's large payments.  In short, the existing record leaves a factual dispute as to how much money Defendant and Debtor actually exchanged.  This is a material issue of fact that should be determined at trial.

### III. Genuine Issues of Material Fact Preclude Summary Judgment on Trustee's Preferential Transfer Claims

Defendant attempts to invoke the "subsequent advance exception" under 11 U.S.C. § 547(c)(4) in resistance to Trustee's preferential transfer claims. "[S]ection 547(c)(4) seeks to encourage creditors to deal with troubled businesses in the hope of rehabilitation."  Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 651 (8th Cir. 1991).  The provision recognizes "that a creditor replenishes the estate when it advances new

6

value after receiving a preferential transfer." Schnittjer v. Pickens (In re Pickens), Adv. No. 06-09166, Bankr. No. 06-01120, 2008 WL 63251, at *4 (Bankr. N.D. Iowa Jan. 3, 2008) (citing In re Kroh Bros. Dev. Co., 930 F.2d at 652).

Defendant's motion here assumes for argument's sake that Trustee has satisfied the five elements of 11 U.S.C. § 547(b). Defendant relies on the subsequent new value defense of § 547(c)(4). The Code defines new value as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee in under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a) (2012). Trustee argues first that there was no "new value" subsequently given from Defendant to Debtor. Moreover, Trustee correctly points out that providing new value alone does not automatically make the subsequent advance exception applicable. See S. Tech. College, Inc. v. Hood, 89 F.3d 1381, 1384 (8th Cir. 1996). The subsequent new value defense requires:

> (1) the creditor must have received a transfer that is otherwise voidable as a preference under section 547(b); (2) after receiving the preferential transfer, the preferred creditor must advance new value, to the debtor on an unsecured basis; and (3) the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition.

The Official Plan Comm. Of Omniplex Commc'ns Grp., L.L.C. V. GE Capital Corp. (In re Ominplex Commc'ns Grp., L.L.C.), 297 B.R. 573, 576 (E.D. Mo. 2003) (citing N.Y.C. Shoes v. Bently Int'l (In re N.Y.C. Shoes), 880 F.2d 679, 680 (3d Cir. 1989)).

The Defendant can only give "subsequent" new value after the preferential transfer. 11 U.S.C. § 547(c)(4). The Court reduces the amount of preferential transfer by the subsequent new value. Iannacone v. Klement Sausage Co., Inc. (In re Hancock-Nelson Mercantile Co., Inc.), 122 B.R. 1006, 1016 (Bankr. D. Minn. 1991). That is, if

7

the debtor later pays for the new value, then the creditor has not replenished the estate. In re Hancock-Nelson Mercantile Co., Inc., 122 B.R. at 1017. The debtor paying back the creditor would offset any initial benefit to the estate. In re Kroh Bros. Dev. Co., 930 F.2d at 653. As a result, the defense under § 547(c)(4) is unavailable to the extent that the debtor paid back the creditor. In re Hancock-Nelson Mercantile Co., Inc., 122 B.R. at 1017. It is well established that "each transfer must be examined independently to determine whether or not the creditor later replenished the estate." In re Rustia, 20 B.R. 131, 135 (Bankr. S.D.N.Y. 1982) (citing 4 William L. Norton Jr. & William L. Norton III, Norton Bankruptcy Law & Practice § 66:36 (3d ed. 2013); see also Waldschmidt v. Ranier (In re Fulghum Construction Co.), 706 F.2d 171 (6th Cir. 1983); Reizman v. Phillips Petroleum Co., (In re Telecommunication Servs. Inc.), 55 B.R. 83 (E.D. Mo. 1985); Flatau v. Marathon Oil Co. (In re Craig Oil Co.), 31 B.R. 402 (Bankr. M.D. Ga. 1983).

The parties seem to agree that Debtor and Defendant exchanged some amount of money. They disagree about the amount, the correlation between loans made and paid off, and the correct method to determine whether the subsequent advance exception applies. The calculation method is a question of law that this Court could resolve on summary judgment. However, fact issues remain. As this Court concluded previously, the checks and bank statements in evidence do not show that Debtor received any new benefit from Defendant or whether the transfers were paying off old loans. Therefore, even if the Court decided which calculation method to apply at this point in the litigation, the Court would be unable to determine which checks to include in the calculation. The

8

Court concludes that this discrepancy is a material issue of fact that should be addressed at trial.

**WHEREFORE**, Defendants' Motion to Dismiss and Motion for Summary Judgment are DENIED.

Dated and Entered: November 8, 2013

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE